**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MARY JO ST. ANDREW,**

                Plaintiff,              5:12-cv-1635
                                                    (GLS)
        v.

**COMMISSIONER OF SOCIAL SECURITY,**

                Defendant.
_____

**APPEARANCES:**                       **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Olinsky Law Group               HOWARD D. OLINSKY, ESQ.
300 S. State Street
Suite 420
Syracuse, NY 13202

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN    JOSHUA L. KERSHNER
United States Attorney           MARIA P. FRAGASSI
100 South Clinton Street         SANTANGELO
Syracuse, NY 13261              Special Assistant U.S. Attorneys

Steven P. Conte
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**
**Chief Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. Introduction**

Plaintiff Mary Jo St. Andrew challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering St. Andrew's arguments, the court affirms the Commissioner's decision and dismisses the complaint.

**II. Background**

On September 6, 2006, St. Andrew filed applications for DIB and SSI under the Social Security Act ("the Act"), alleging disability since August 31, 2002. (Tr.[1] at 52-53, 87-94.) After her applications were denied, (*id.* at 54-61), St. Andrew requested a hearing before an Administrative Law Judge (ALJ), which was held on October 30, 2008 before ALJ J. Michael Brounoff, (*id.* at 16-51, 62). On February 4, 2009, ALJ Brounoff issued an unfavorable decision denying the requested benefits. (*Id.* at 6-15.) After the Appeals Council's subsequent denial of review, St. Andrew

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 12.)

commenced an action in Federal District Court and, on consent of the parties, the matter was remanded for further administrative proceedings. (*Id.* at 1-3, 415-16.) Thereafter, the Appeals Council remanded the case to ALJ Robert Gale (hereinafter "the ALJ") who, on December 20, 2011, again denied St. Andrew's claim following additional hearings held on March 29, 2011, and November 22, 2011. (*Id.* at 295-373, 417-20.)[2] This became the Commissioner's final determination upon the Appeals Council's denial of review. (*Id.* at 291-94.)

St. Andrew commenced the present action by filing her complaint on November 1, 2012 wherein she sought review of the Commissioner's determination. (Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 10, 12.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 17, 18.)

### III. **Contentions**

St. Andrew contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (Dkt. No. 17 at 14-23.) Specifically, St. Andrew claims that the ALJ: (1) rendered a

---

[2] The Appeals Council also instructed the ALJ to consolidate St. Andrew's September 2006 claims with her subsequent application for SSI benefits, filed while her appeal of ALJ Brounoff's unfavorable decision was pending. (Tr. at 420, 530-33.)

residual functional capacity (RFC) determination that is unsupported by substantial evidence; (2) failed to make a proper credibility determination; and (3) improperly determined that she was capable of performing her past relevant work. (*Id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and his decision is also supported by substantial evidence. (Dkt. No. 18 at 5-13.)

## IV. Facts

The court adopts the parties' undisputed factual recitations. (Dkt. No. 17 at 2-12; Dkt. No. 18 at 1.)

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[3] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

---

[3] 42 U.S.C. § 1383(c)(3) renders section 405(g) applicable to judicial review of SSI claims. As review under both sections is identical, parallel citations to the regulations governing SSI are omitted.

4

## VI. Discussion

### A. RFC Determination

First, St. Andrew contends that the ALJ's errors in weighing various medical opinions of record renders his RFC[4] determination unsupported by substantial evidence.[5] (Dkt. No. 17 at 14-20.) The Commissioner counters, and the court agrees, that the ALJ appropriately weighed the medical opinion evidence before him, and his RFC determination is supported by substantial evidence. (Dkt. No. 18 at 5-10.)

Medical opinions, regardless of the source, are evaluated by considering several factors outlined in 20 C.F.R. § 404.1527(c). Controlling weight will be given to a treating physician's opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Id.* § 404.1527(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

---

[4] A claimant's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 404.1545(a)(3). An ALJ's RFC determination must be supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

[5] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotations omitted).

Unless controlling weight is given to a treating source's opinion, the ALJ is required to consider the following factors in determining the weight assigned to a medical opinion: whether or not the source examined the claimant; the existence, length and nature of a treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner. *See* 20 C.F.R. § 404.1527(c). The ALJ must provide "'good reasons' for the weight given to the treating source's opinion." *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (citations omitted). "Nevertheless, where 'the evidence of record permits [the court] to glean the rationale of an ALJ's decision,'" it is not necessary that the ALJ "'have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.'" *Id*. (citation omitted).

Here, the ALJ concluded that St. Andrew retains the RFC to lift and carry twenty pounds occasionally and ten pounds frequently, and, in an eight-hour day, stand or walk two hours and sit six hours, as long as she has the ability to alternate positions every thirty minutes. (Tr. at 302.) In addition, St. Andrew can occasionally climb, balance, stoop, kneel, crouch,

and crawl, but cannot perform repetitive pushing and pulling, climb ladders or scaffolds, or tolerate concentrated exposure to cold temperatures, humidity, and wetness.  (*Id.*)  In making his determination, the ALJ gave "some weight" to independent medical examiner Joseph Ortiz, who opined in October 2002 that St. Andrew should avoid repetitive bending and twisting, and should only lift up to thirty pounds.  (*Id.* at 162-65, 303.)  Further, the ALJ gave "some weight" to the October 2003 opinion of independent medical examiner Daniel Carr who indicated that St. Andrew could return to work as long as she was able to change positions frequently and did not lift more than thirty pounds.  (*Id.* at 166-68, 303.)  The ALJ afforded "great weight" to treating physician Carri Jones, who opined in February 2010 that St. Andrew can lift twenty pounds occasionally, but should avoid repetitive bending and alternate positions every twenty to thirty minutes.  (*Id.* at 304, 717-18.)  "[C]onsiderable weight" was given to independent medical examiner Jalal Sadrieh, who on numerous occasions opined that St. Andrew can lift up to fifteen or twenty pounds, but should avoid pushing, pulling, and repetitive bending.  (*Id.* at 202-03, 206-12, 264-67, 279-81, 304.)  "[C]onsiderable weight" was also given to the July 2011 opinion of non-examining medical consultant Thomas Weiss that St.

7

Andrew can lift and carry twenty pounds occasionally, sit for six hours a day, stand and walk two hours a day, and occasionally perform postural movements. (*Id.* at 305, 747-48.) On the other hand, "little weight" was given to the opinion of consultative examiner Kalyani Ganesh that St. Andrew suffered moderate to severe limitations in sitting, standing, walking, climbing, lifting, carrying, pushing, pulling, and bending. (*Id.* at 259-63, 304.)

St. Andrew argues that the ALJ erred in weighing the opinions of Drs. Weiss and Ganesh, and in failing to weigh the opinion of treating physician Stephen Robinson. (Dkt. No. 17 at 15-20.) Specifically, St. Andrew argues that Dr. Weiss' testimony at the May 2011 administrative hearing undermined his credibility. (*Id.* at 15-16.) At the hearing, Dr. Weiss testified that, contrary to his interrogatory answer and based on the results of a November 2009 MRI, St. Andrew does in fact suffer orthopedic impairments. (Tr. at 364-65, 745.) Dr. Weiss further stated, however, that, without a subsequent physical exam corresponding with the November 2009 MRI, he could not specify what physical impairments St. Andrew suffers. (*Id.* at 366-67.) St. Andrew also argues that the ALJ erred in discounting the opinion of Dr. Ganesh because her opinion was unclear,

8

she only examined St. Andrew on one brief occasion, and her opinion was inconsistent with the remainder of the opinion evidence. (Dkt. No. 17 at 16-19.) St. Andrew asserts that the ALJ should have re-contacted Dr. Ganesh if her opinion was unclear, and should not have discounted her opinion based on the number of times she examined St. Andrew, while simultaneously giving "some weight" to one-time examiner Dr. Carr. (*Id.* at 17-18.) St. Andrew also argues that Dr. Ganesh's opinion is deserving of greater weight because it is supported by the results of her examination. (*Id.* at 19.)

Despite St. Andrew's contentions, it is clear that the ALJ's RFC determination is supported by substantial evidence. Every functional assessment of record, other than that of Dr. Ganesh,[6] supports the ALJ's RFC determination. *See* 20 C.F.R. 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight [the Commissioner] will give to that opinion.").[7]  Indeed, St. Andrew alleges no

---

[6] Dr. Weiss testified that Dr. Ganesh's assessment of "moderate to severe limitations" likely indicates that St. Andrew was capable of either sedentary or less than sedentary work. (Tr. at 370.) "Sedentary work" is defined as: "lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. . . . Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

[7] To the extent that St. Andrew argues that Dr. Sadrieh's opinion is inconsistent with the ALJ's RFC determination, (Dkt. No. 17 at 18), the court disagrees. Dr. Sadrieh examined St.

9

error in the weight afforded to the opinions of Drs. Ortiz, Carr, Sadrieh, or Jones. (*See generally* Dkt. No. 17.) It appears that the ALJ gave the greatest weight to St. Andrew's treating physician, Dr. Jones, who, in addition to providing the functional assessment noted above, did not recommend surgery or injections because St. Andrew "is able to function to a good quality of life being independent with her activities." (Tr. at 717.) Thus, any error in weighing the opinion of Dr. Weiss is, at most, harmless. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("[W]here application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration."). Further, as there were no obvious gaps, and the record presented a complete medical history, the ALJ was under no duty to seek additional information from Dr. Ganesh before rejecting St. Andrew's claim. *See Rosa v. Callahan,* 168 F.3d 72, 79 n.5 (2d Cir. 1999). Additionally, the ALJ's reasoning for the weight assigned to the opinion of Dr. Ganesh is legally sound and supported by substantial evidence. (Tr. at 303-04.) As

---

Andrew in June 2004, 2005, 2006, November 2006, and June 2007. (Tr. at 202-03, 206-12, 264-67, 279-81.) His opinion–that St. Andrew can perform work that does not require lifting more than fifteen to twenty pounds, pushing, pulling, and frequent bending—supports the ALJ's conclusion that St. Andrew can lift and carry twenty pounds occasionally, but cannot perform repetitive pushing and pulling, and can only occasionally stoop, kneel, and crouch. (*Id.* at 203, 208, 211, 267, 281, 302.)

the ALJ pointed out, Dr. Ganesh did not review any medical records, did not quantify the degree of limitation St. Andrew suffers, and rendered an opinion that is inconsistent with the other functional assessments of record.[8] (*Id.* at 259-63); *see* 20 C.F.R. 404.1527(c)(4), (6).

Turning to Dr. Robinson, his treatment records from November 2004 through November 2006 indicate that St. Andrew suffered a temporary, total disability. (Tr. at 215, 218, 221, 226, 230, 232, 236, 239, 242, 245, 248, 251, 254, 258, 666.) The ALJ did not specifically address this opinion in his decision, however, he did discuss Dr. Robinson's treatment records, noting that, at various times, St. Andrew reported to Dr. Robinson that she did not want to pursue physical therapy, nerve blocks, or surgery, and that her medication regimen helped control her pain and allowed her to remain active. (*Id.* at 214-15, 218, 258, 305.) As Dr. Robinson's conclusion that St. Andrew is totally disabled offers no assessment of St. Andrew's functional capabilities and is, instead, on an issue reserved to the Commissioner, it is not entitled to any special significance. *See* 20 C.F.R. § 404.1527(d)(3). Based on the foregoing, including it's inconsistency with

---

[8] Dr. Carr, on the other hand, based his opinion on a review of St. Andrew's medical records in addition to his one-time examination, and his opinion quantifies St. Andrew's limitations. (Tr. at 166-68.)

11

the opinions of Drs. Ortiz, Carr, Sadrieh, and Jones, the court declines to remand due to the ALJ's failure to assign Dr. Robinson's opinion a specific weight.

**B.     Credibility Determination**

Next, St. Andrew argues that the ALJ failed to properly assess her credibility.  (Dkt. No. 17 at 20-22.)  According to St. Andrew, the ALJ's credibility finding is unsupported by substantial evidence because the ALJ failed to consider all of her testimony with respect to her limitations and the side effects of her medication, and improperly discounted her allegations based on her conservative treatment history, which was prescribed because more aggressive treatment would not improve her symptoms. (*Id.*)  The court disagrees.

Once the ALJ determines that the claimant suffers from a "medically determinable impairment[] that could reasonably be expected to produce the [symptoms] alleged," he "must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry."  *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (internal

quotation marks and citations omitted). In performing this analysis, the ALJ "must consider the entire case record and give specific reasons for the weight given to the [claimant's] statements." SSR 96-7p, 61 Fed. Reg. 34,483, 34,485 (July 2, 1996). Specifically, in addition to the objective medical evidence, the ALJ must consider the following factors: "1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness, and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms." *F.S. v. Astrue*, No. 1:10-CV-444, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)).

Here, the ALJ determined that St. Andrew's statements concerning the intensity, persistence, and limiting effects of her symptoms "were not entirely credible." (Tr. at 305.) In making this determination, the ALJ considered the objective medical findings, opinion evidence, St. Andrew's course of treatment, and her criminal record. (*Id.*) In particular, the ALJ noted Dr. Sadrieh's opinion that St. Andrew's "subjective complaints greatly outweigh her objective findings," and treating physician Mahender Goriganti's suggestion that there was a lack of objective findings to explain

13

St. Andrew's back pain. (*Id.* at 185-87, 191, 211.) Further, the ALJ considered St. Andrew's refusal, at various times throughout the record, of treatments such as epidural injections, nerve blocks, physical therapy, and surgery. (*Id.* at 209, 213-15, 218, 258, 279, 305, 717, 724.)

St. Andrew asserts that the ALJ improperly discounted her subjective complaints due to the fact that she followed a prescribed course of conservative treatment. (Dkt. No. 17 at 20; Tr. at 190.) On the contrary, the ALJ properly considered the fact that St. Andrew declined recommended treatment as evidence that her symptoms are not as severe as alleged. *See* SSR 96-7p, 61 Fed. Reg. at 34,487 (explaining that an "individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints"). In addition, the ALJ noted that St. Andrew's conviction for unauthorized use of a credit card is a crime of dishonesty. (Tr. at 28, 305, 333.) Thus, although the ALJ did not undertake a step-by-step exposition of the factors articulated in 20 C.F.R. § 404.1529(c), he sufficiently set forth reasons, which were well-grounded in the record, for finding St. Andrew to be only partially credible. *See Judelsohn v. Astrue*, No. 11-CV-388S, 2012 WL 2401587, at *6 (W.D.N.Y. June 25, 2012) ("[F]ailure to expressly consider every factor set forth in the

14

regulations is not grounds for remand where the reasons for the ALJ's determination of credibility are sufficiently specific to conclude that he considered the entire evidentiary record." (internal quotation marks and citation omitted)); *see also Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (noting that, it is not "require[d] that [the ALJ] have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability").

C. **Past Relevant Work**

Finally, St. Andrew claims that the ALJ erred in determining that she is capable of performing her past relevant work as a cashier and parking lot attendant. (Dkt. No. 17 at 22-23.) Specifically, she alleges that the ALJ's errors in assessing her RFC and credibility, along with a failure to include in the hypothetical posed to the vocational expert (VE) the limitations articulated by Dr. Ganesh, fatally undermine the step-four determination. (*Id*.) As discussed above, however, the ALJ's RFC and credibility findings were legally sound and are supported by substantial evidence. Although the hypothetical question did not include a recitation of Dr. Ganesh's limitations, it appropriately encompassed the restrictions contained in the

15

ALJ's RFC analysis. (*Compare* Tr. at 302, *with id.* at 343.) As such, the ALJ's step-four determination was free of legal error and is supported by substantial evidence. *See Mancuso v. Astrue*, 361 F. App'x 176, 179 (2d Cir. 2010) (explaining that, if the ALJ's RFC assessment is supported by substantial evidence, it is appropriate for him to rely on that RFC assessment in questioning the VE.)

D. **Remaining Findings and Conclusions**

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and St. Andrew's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

July 3, 2014
Albany, New York

*Gary L. Sharpe*
Chief Judge
U.S. District Court